DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION. {¶ 1} Relator, Anita Ross, filed this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order *Page 2 
denying her application for an increase of permanent partial disability ("PPD"), and to enter an order granting an increase of PPD.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(D) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in denying relator's application for an increase of PPD. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed the following two objections to the magistrate's decision:
 OBJECTION 1
 THE SHO DID NOT HAVE "SOME EVIDENCE" TO PROVE THAT THERE WERE NO "NEW AND CHANGED CIRCUMSTANCES" AND FAILED TO FOLLOW PROPER PROCEDURE IF HE DID NOT AGREE WITH THE FILE REVIEW PROCEDURE DONE BY THE BWC.
 OBJECTION 2
 IT IS NOT WITHIN THE SHO'S FACT-FINDING DISCRETION TO REJECT RELATOR'S EVIDENCE AS WELL AS THE EVIDENCE SUBMITTED ON BEHALF OF THE BUREAU. THE COMMISSION HAS NOT PROVIDED A VALID EXPLANATION SUPPORTED BY SOME EVIDENCE FOR DENIAL OF RELATOR'S APPLICATION FOR AN INCREASE IN HER PPD.
 {¶ 4} Relator's objections are interrelated, and, therefore, will be addressed together. Relator's objections essentially raise two issues. The first is that the magistrate was incorrect in finding that the commission gave a basis for rejecting the report of Dr. Mansour and had some evidence to establish there were no new and changed *Page 3 
circumstances. As noted by the magistrate, in the absence of new and changed circumstances, the commission is unable to increase the percentage above the prior determination of zero percent. The SHO's order states that it did not find persuasive the report of Dr. Marshall in light of the report of Dr. Kale. Dr. Mansour's opinion explicitly states that it is based on the findings of Dr. Marshall. Thus, it would be illogical for the commission to rely on an opinion that is explicitly based on findings determined by the commission to be unpersuasive.
 {¶ 5} The second issue raised by relator is that the commission improperly relied on a prior evaluation examination. This argument was made to, and addressed by, the magistrate. For the reasons set forth in the magistrate's decision, we do not find relator's position to be well-taken.
 {¶ 6} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied. BROWN and TYACK, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 9, 2007 IN MANDAMUS {¶ 7} In this original action, relator, Anita Ross, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for an increase of permanent partial disability ("PPD"), and to enter an order granting an increase of PPD. *Page 5 
Findings of Fact: {¶ 8} 1. On January 21, 2002, relator sustained an industrial injury while employed as a store clerk for respondent Sterling Stores, LLC ("employer"), a state-fund employer. The industrial claim is allowed for "sprain lumbar region," and is assigned claim number 02-309022.
 {¶ 9} 2. On July 19, 2004, relator filed an application for the determination of her percentage of PPD.
 {¶ 10} 3. Relator's application prompted the Ohio Bureau of Workers' Compensation ("bureau") to have relator examined by Lawrence A. Kale, M.D., on September 10, 2004, who reported:
 * * *
 As part of her job, she stocked merchandise, ran the register and completed paperwork. The injury occurred when she was lifting milk crates, each containing 4 one-gallon containers. She stated, "I had lifted two crates when suddenly I couldn't stand up straight because of severe pain in my low back." She stated that she had carried the crates from a dolly and was stacking them inside of the cooler. As she started to lift the second crate off the dolly, she felt the pain shooting into her left lower back. * * * She reports lower back pain and stiffness and the inability to bend forward completely without pain. Once every few months she notices "a shooting pain from my back down into the back of my left thigh." She denied any previous problems or injuries, including any other work, recreational, motor vehicle or liability-related injuries involving the same body part for which she recalled receiving treatment. Her medications currently include ibuprofen. She stated that she last worked about 4-5 months ago running a cash register at Dollar Giant. She was unable to remain on her feet for any prolonged period of time because, "my back catches and cramps." However, she remains independent with ADL's and cares for children. *Page 6 Review of provided records
 * * *
 1/30/02 [Injured worker] reevaluated Occuhealth reporting that back pain was "98% better." She had been scheduled for physical therapy but told the therapist that she was better and did not need the physical therapy and was no longer taking pain medications. Exam demonstrated negative bilateral straight leg raise with normal strength in the lower extremities. She was advised return to restricted work activities and then advance to regular work as tolerated. She would follow up if there was any worsening or recurrence of signs and symptoms.
* * *
 Discussion
 The claimant's current complaints are, more probably than not, not related to the soft tissue injury resulting from the 2002 claim based on the reviewed medical documentation that she was "98% improved" on her last visit to OccuHealth when she reported not using medications and was not going to proceed through recommended physical therapy. She stated she sought no further treatment, suggesting that the allowed condition was resolved[.] She denied requiring any current assistance with ADL's and remains at home providing care for her children when necessary.
 I accept the allowed conditions as stated in this claim and any clinical findings provided by physicians of record. Based on all reviewed records, the history and clinical examination, to reasonable degree of medical probability, I offer the following:
 Permanent Impairment Evaluation
 A permanent impairment evaluation was performed in accordance with the AMA's Guides to the Evaluation of Permanent Impairment, 5th Edition. Based solely on the allowed condition, the claimant best meets the criteria for DRE lumbosacral category I allowing 0% [whole person impairment]. *Page 7 
 As per the AMA Guides fifth edition and the policies of the Ohio Bureau of Worker's compensation, additional 1-3 percent impairment can be added on the basis of pain as a onetime award only encompassing all impairments. It is felt that in this case, the impairment demonstrated above adequately addresses this issue and his [sic] pain complaints are minimal and do not affect daily activities to any significant extent.
 {¶ 11} 4. On October 14, 2004, the bureau mailed a tentative order finding that relator has no percentage of PPD based upon Dr. Kale's September 10, 2004 report.
 {¶ 12} 5. Relator timely filed an objection to the bureau's tentative order.
 {¶ 13} 6. Following a December 4, 2004 hearing, a district hearing officer ("DHO") issued an order finding that relator does not have a percentage of PPD based upon Dr. Kale's September 10, 2004 report.
 {¶ 14} 7. Apparently, an application for reconsideration of the DHO's order of December 4, 2004 was not filed as would be permitted under R.C. 4123.57(A).
 {¶ 15} 8. On March 29, 2005, at relator's own request, she was examined by Brian W. Marshall, D.O. Dr. Marshall's report dated March 29, 2005, states:
 HISTORY: Ms. Anita Ross was lifting up 40-lb. milk crates and moving them, when she experienced pain in her lower back. She received conservative medical treatment for her injury. X-rays were taken. She received 6 sessions of physical therapy treatments. She lost 3 days from work due to the back injury. Currently, she takes Ibuprofen for pain when needed.
 COMPLAINTS: Ms. Ross complains of stiffness in her lower back. She has pain in her back that prevents her from lifting anything heavy. Walking for long distances increased the pain. She is also unable to sleep on her back because this position causes pain. She has numbness in the left posterior thigh area. *Page 8 
 PHYSICAL EXAM: The patient has had no back surgery. She had radicular pain and paraspinal spasms in the lumbar area. She has a flattened lumbar lordosis. Her gait is antaltic. During this exam, she frequently would pace the room, because sitting caused pain. She had a straight leg raise bilaterally. Her lower extremity strength was equal and normal bilaterally. There were no signs of atrophy or decreased sensation. Her deep tendon reflexes were normal and equal, bilaterally in the patella and the Achilles.
 OPINION: Using the AMA Guides to the Evaluation of Permanent Impairment, 5th
Edition, page 384, table 15-3, there is a DRE Category II, 7% impairment for the allowed condition. In addition, I allow 1% for pain.
 The whole person impairment is 8%.
(Emphasis sic.)
 {¶ 16} 9. On May 23, 2005, relator filed an application for an increase in her percentage of PPD.
 {¶ 17} 10. Relator's application for an increase prompted the bureau to request a medical file review from Waleed N. Mansour, M.D. On September 9, 2005, Dr. Mansour issued a report in which he opined that relator has a five percent permanent partial impairment. Dr. Mansour's percentage opinion is premised upon his acceptance of the findings contained in Dr. Marshall's report.
 {¶ 18} 11. On September 13, 2005, the bureau mailed a tentative order finding that relator has five percent PPD based upon Dr. Mansour's report.
 {¶ 19} 12. Relator timely objected to the bureau's tentative order mailed September 13, 2005. With her objection, relator submitted another report from Dr. Marshall that is also dated March 29, 2005. This report is identical to the previous report except for the last sentence which states that the whole person impairment is 11 percent. *Page 9 
 {¶ 20} 13. Following a November 4, 2005 hearing, a DHO issued an order finding that relator has five percent PPD based upon Dr. Mansour's report.
 {¶ 21} 14. The employer timely filed an application for reconsideration pursuant to R.C. 4123.57(A).
 {¶ 22} 15. Following a December 19, 2005 hearing, a staff hearing officer ("SHO") issued an order stating:
 The Injured Worker previously filed a C-92 Application for Determination of Percentage of Permanent Partial Disability, on 7/19/2004, and said Application was ruled upon by the Administrative Order of 10/14/2004. Based upon the 9/10/2004 medical examination by Lawrence A. Kale, M.D., the Administrator of the Bureau of Workers' Compensation found that there was no Percentage of Permanent Partial Disability resulting from the allowed sprain of the lumbar region recognized in this claim. The Injured Worker then filed a C-167T Objection to the Tentative Order, on 11/4/2004, and a hearing was conducted on said objection on 12/14/2004. At that time, the District Hearing Officer also relied upon the opinion of Lawrence A. Kale, M.D., and found that there was no Percentage of Permanent Partial Disability resulting from the sprain of the lumbar region, which has been allowed in this claim.
 Then, on 5/23/2005, the Injured Worker filed a C-92-A Application for a subsequent determination (increase) of Percentage of Permanent Partial Disability.
 However, under Ohio Revised Code Section 4123.57(B), the Injured Worker bears the burden of proving that there are "new and changed circumstances" which have developed since the time of the hearing on the last determination of Percentage of Permanent Partial Disability, in order to obtain an increase [in] the Permanent Partial Disability award.
 The Injured Worker was previously examined, on 9/10/2004, by Edmund Wymyslo, M.D. Dr. Wymyslo reviewed the Injured Worker's medical records and noted that, "At the time of last treatment on 1/30/2002, he [sic] was found to be `98% better'". He also made note of the fact that, although she *Page 10 
had been scheduled for physical therapy, she told the physical therapist that she was better and did not need the physical therapy and was no longer taking pain medications. After further review of her medical records and the performance of a physical examination, Dr. Wymyslo stated his professional medical opinion that, "The claimant's current complaints are, more probably than not, not related to the soft tissue injury resulting from the 2002 claim."
 It is the finding of this Staff Hearing Officer that the Injured Worker failed to meet her burden of proving "new and changed circumstances" since the time of the prior hearing on the original C-92 Application for Percentage of Permanent Partial Disability. Two reports have been submitted by the Injured Worker, both from Brain W. Marshall, D.O., one indicating an 8% and the other indicating an 11% Percentage of Permanent Partial Disability. However, both of those exams are word-for-word identical, except for the percentage stated. Therefore, this Staff Hearing Officer does not find the opinion of Dr. Marshall to be persuasive, in light of the prior well-reasoned opinion of Edmund Wymyslo, M.D.
 Therefore, it is the order of this Staff Hearing Officer that the order of the District Hearing Officer, from the hearing of 11/14/2005, is hereby VACATED.
 It is the further finding of this Staff Hearing Officer that the Injured Worker does not have any Permanent Partial Disability resulting from the residual of the allowed sprain of the lumbar region recognized in this claim.
 Therefore, it is hereby ordered that the Injured Worker's C-92-A Application, for an Increase in Percentage of Permanent Partial Disability, filed 5/23/2005, is hereby DENIED.
 All medical reports and evidence contained in the Industrial Commission filed [sic], as well as the evidence and arguments presented at hearing, were reviewed, considered and evaluated, including, but not limited to the reports of Waleed N. Mansour, M.D., Brian W. Marshall, D.O., and Edmund Wymyslo, M.D. *Page 11 
 This order is based particularly upon the report of Edmund Wymyslo, M.D.
(Emphasis sic.)
 {¶ 23} 16. On June 5, 2006, relator, Anita Ross, filed this mandamus action.
Conclusions of Law: {¶ 24} Two issues are presented: (1) whether this court should construe the references to Dr. Wymyslo in the SHO's order of December 19, 2005 as references to Dr. Kale; and (2) whether the commission has provided a valid explanation supported by some evidence for denial of relator's application for an increase in her PPD.
 {¶ 25} The magistrate finds: (1) this court should construe the references to Dr. Wymyslo in the SHO's order as references to Dr. Kale; and (2) the commission has provided a valid explanation supported by some evidence for denial of relator's application for an increase in her PPD.
 {¶ 26} Accordingly, it is this magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} Turning to the first issue, the parties agree that there was no report in the record from Dr. Wymyslo for the commission to consider. According to relator, the SHO's repeated references to the report of a Dr. Wymyslo are references to a nonexistent medical report that fatally flaws the SHO's order. On the other hand, respondents argue that it is clear from the order and the record before this court that all references to Dr. Wymyslo are in fact references to Dr. Kale and that the references to Dr. Wymyslo should be viewed by this court as harmless mistakes or clerical errors. The magistrate agrees with respondents. *Page 12 
 {¶ 28} Precedent for viewing the references to a Dr. Wymyslo as harmless clerical errors can be found at State ex rel. Fresh Mark, Inc.v. Mihm (1992), 65 Ohio St.3d 417, a case not cited by the parties.
 {¶ 29} In Fresh Mark, the commission's orders awarded compensation for impaired earning capacity, but stated that the awards were "[b]ased on the medical reports of Dr. Steiman." Id. at 418. However, there were no such reports from a Dr. Steiman contained in the record. In earlier orders determining the claimant's percentage of PPD, reliance was placed on the reports of Drs. Kackley, McCloud and Hubbell.
In Fresh Mark, the court resolved the problem as follows:
 * * * Given the commission's reliance on the reports of these three doctors in its earlier determinations, and the fact that the record contains no reports of a "Dr. Steiman," we are convinced that the commission's reference to "Dr. Steiman" in its orders awarding compensation for impaired earning capacity were inadvertent errors.
 * * *
 In State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, 483-484, * * * and a number of other cases, we have stressed the importance of specificity of commission orders and have required that such orders contain a citation to the evidence relied upon and a brief explanation of the decision granting or denying benefits. In Mitchell, we stated that "this court will no longer search the commission's file for `some evidence' to support an order of the commission not otherwise specified as a basis for its decision." Id. at 484[.] * * * Our decision today does not represent a departure from the general rule of Mitchell and its progeny. Rather, we emphasize that, in the case at bar, the commission's citations to the reports of Dr. Steiman were clearly mistakes (perhaps clerical errors) and that a mere cursory examination of the record supports the commission's orders granting Bowman benefits for impaired earning. On these facts, we uphold the commission's orders. *Page 13 
Id. at 419-420. (Emphasis sic.)
 {¶ 30} Here, the first paragraph of the SHO's order of December 19, 2005 refers to the "9/10/2004 medical examination by Lawrence A. Kale, M.D." The SHO notes that the commission had previously relied upon Dr. Kale's report to deny the original application for a determination of the percentage of PPD.
 {¶ 31} In the fourth paragraph of the order, the SHO states that relator was previously examined "on 9/10/2004, by Edmund Wymyslo, M.D." September 10, 2004 is the date of Dr. Kale's report, as previously noted.
 {¶ 32} Also in the fourth paragraph of the order, the SHO erroneously attributes statements found only in Dr. Kale's report as being from a report from a Dr. Wymyslo. It cannot be any clearer that the statements are taken from the report of Dr. Kale.
 {¶ 33} In the magistrate's view, there is no doubt that the SHO mistakenly referred to a Dr. Wymyslo when he intended to refer to Dr. Kale. In short, this court should treat the SHO's references to a Dr. Wymyslo as references to Dr. Kale.
 {¶ 34} Turning to the second issue, R.C. 4123.57(A) states:
 * * * No application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination.
 {¶ 35} In State ex rel. Casper v. McGraw Edison Serv. (1989),47 Ohio St.3d 113, the claimant filed an application for an increase in her PPD award after a final commission determination that she had a two percent PPD, following a July 30, 1986 hearing on her initial application. *Page 14 
 {¶ 36} In support of her application for an increase in her PPD, the claimant submitted the July 22, 1986 report of Dr. Cameron that pre-dated the July 30, 1986 hearing.
 {¶ 37} In Casper, the commission denied the claimant's application for an increase in her PPD "for failure to demonstrate new and changed circumstances such as to justify a modification of the prior award." Id. at 113. The claimant then filed a complaint in mandamus in this court. This court denied the writ and the claimant then appealed as of right to the Supreme Court of Ohio.
 {¶ 38} The Casper court affirmed the judgment of this court. After quoting the above-quoted portion of R.C. 4123.57(A), the Casper court explained:
 Appellant's application for an increase in her award was accompanied only by Dr. Cameron's July 22, 1986 report. Appellant's initial permanent partial disability hearing, however, was on July 30, 1986. Regardless of its content, a medical report that predates the original permanent partial disability determination is not substantial evidence of new and changed circumstances occurring thereafter. The commission was thus correct in dismissing appellant's application for an increase in her award.
Id. at 114. (Emphasis sic.)
 {¶ 39} Citing Casper, relator claims that the SHO abused his discretion by stating reliance upon the September 10, 2004 report of Dr. Kale which predates the December 14, 2004 hearing before the DHO who rendered the commission's final determination as to relator's initial application for a determination of her percentage of PPD. According to relator, R.C. 4123.57(A), as above quoted, prohibits the commission from relying upon medical evidence in determining her application for an increase in PPD when that evidence was previously relied upon by the commission to adjudicate a prior *Page 15 
application and, thus, the evidence predates "the hearing on the original or last determination." The magistrate disagrees with relator's argument.
 {¶ 40} Analysis begins with the observation that the SHO relied upon Dr. Kale's September 10, 2004 report to test the credibility of Dr. Marshall's reports submitted by relator in support of her application for an increase in her PPD.
 {¶ 41} The SHO found that relator had failed to meet her burden of proving "new and changed circumstances." The SHO explained why the reports from Dr. Marshall were found to be unpersuasive. In that regard, the SHO observed that the two reports from Dr. Marshall are "word-for-word identical, except for the percentage stated." (Emphasis sic.)
 {¶ 42} While the SHO did not explain why the medical file review of Dr. Mansour was found not to be persuasive, given that Dr. Mansour's opinion of five percent PPD is premised entirely upon his acceptance of Dr. Marshall's findings, it is obvious why Dr. Mansour's report was not relied upon by the SHO to support a five percent PPD award.
 {¶ 43} Thus, the SHO weighed the medical evidence submitted by relator in support of her application for an increase in her PPD and found it to be unpersuasive. Likewise, the SHO placed no reliance on the report of Dr. Mansour. It was within the SHO's fact-finding discretion to reject relator's evidence as well as the evidence submitted on behalf of the bureau. Contrary to relator's suggestion here, the SHO was not duty-bound to accept at least one of the submitted medical reports simply because the employer failed to submit a medical report indicating that relator has no percentage of PPD. *Page 16 
 {¶ 44} Moreover, nothing in R.C. 4123.57, nor in Casper, prohibits the commission from using prior relied upon evidence to test the credibility of evidence submitted in support of an application for an increase in PPD. That is, the commission was not prohibited from using Dr. Kale's report to test the credibility of Dr. Marshall's reports.
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
/s/KENNETH W. MACKE
 KENNETH W. MACKE MAGISTRATE *Page 1